# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

AMERICAN BROADCASTING
COMPANIES, INC., THE ASSOCIATED
PRESS, CABLE NEWS NETWORK,
INC., CBS BROADCASTING INC.,
FOX NEWS NETWORK, L.L.C., and
NBC UNIVERSAL, INC.,

                Plaintiffs,


v.                       **MEMORANDUM OF LAW & ORDER**
                            Civil File No. 08-5285 (MJD/AJB)

MARK RITCHIE, in his official
capacity as the Secretary of State of
the State of Minnesota, and LORI
SWANSON, in her official capacity as
the Attorney General of the State of
Minnesota,

                Defendants.

---

Susan Buckley, Brian T. Markley, Kayvan B. Sadeghi, Cahill Gordon & Reindel
LLP, and John P. Borger, Faegre & Benson LLP, Counsel for Plaintiffs.

Kenneth E. Raschke, Jr. and Nathan J. Hartshorn, Minnesota Attorney General's
Office, Counsel for Defendants.

---

# I.      INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for an Award of Attorney's Fees and Expenses Pursuant to 42 U.S.C. § 1988.  [Docket No. 52]  The Court heard oral argument on January 21, 2011.

# II.     SUMMARY OF THE COURT'S OPINION

The Court grants Plaintiffs' motion for attorney's fees because Plaintiffs were the prevailing party.  Plaintiffs achieved an important and complete First Amendment victory.  Defendants are not protected from judgment by Eleventh Amendment immunity.  However, the Court reduces the amount of attorney's fees and expenses awarded because the remarkably high hourly billing rates charged by Plaintiffs' New York law firm were unreasonable, and excellent and cost-effective local counsel were readily available.  Additionally, Plaintiffs' counsel's billing records were overly vague, and excessive hours were expended in litigating this matter.

# III.    BACKGROUND

## A.      Factual Background

Plaintiffs are American Broadcasting Companies, Inc., The Associated Press, Cable News Network, Inc., CBS Broadcasting Inc., Fox News Network,

L.L.C., and NBC Universal, Inc.  Plaintiffs all have conducted exit polling in the

past and intended to conduct exit polling in Minnesota on Election Day,

November 4, 2008.

### B.    The Complaint and Motion for Preliminary Injunction

On September 29, 2008, Plaintiffs filed a Complaint against Minnesota

Secretary of State Mark Ritchie and Minnesota Attorney General Lori Swanson,

in their official capacities.  The Complaint contained one count alleging that, as

applied to Plaintiffs, Minnesota Statute § 204C.06, subdivision 1 ("the Statute")

was a violation of Plaintiffs' rights under the First Amendment of the United

States Constitution.

On September 30, 2008, Plaintiffs filed a motion for a preliminary

injunction barring enforcement of the second sentence of the Statute as applied to

their exit polling activities.  At the time, the Statute provided:

> **Lingering near polling place.**  An individual shall be allowed to go
> to and from the polling place for the purpose of voting without
> unlawful interference.  No one except an election official or an
> individual who is waiting to register or to vote shall stand within
> 100 feet of the building in which a polling place is located.

Violation of the Statute was a misdemeanor.  Minn. Stat. § 645.241.

### C.    Evolution of Minnesota Exit Polling Law

In 1988, this Court issued an order enjoining enforcement of predecessor statute Minnesota Statute § 204C.06, subdivision 1 (1986), which provided: "No one, either inside a polling place or within 100 feet of the entrance to it, shall ask a voter how the voter intends to vote or has voted on any office of question on the ballot." CBS Inc. v. Growe, 15 Media L. Rep. (BNA) 2275 (D. Minn. 1988). The Court held that the restriction was a content-based place restriction because it restricted inquiry within a 100-foot radius, an area constituting a traditional public forum. Id. at 2277.  The Court then concluded that the restriction was not narrowly tailored because, although Minnesota had a legitimate interest in maintaining order at the polls, the statute was over-inclusive because it banned nondisruptive exit polling. Id. at 2278.  The Court held that there was a strong likelihood that the plaintiffs would succeed on the merits of demonstrating that the statute violated the First Amendment. Id. at 2279.

After entry of the Growe injunction, in 1989, the Minnesota Legislature amended the statute to, in effect, prohibit any person from standing within 100 feet of any polling place in Minnesota.  However, the Secretary of State advised the Growe plaintiffs that she would interpret the term "polling place" to mean the room where the polling takes place, rather than the building.

In 1993, the legislature amended § 204C.06, subd. 1, to clarify that the 100-foot distance prohibiting standing near the entrance to a polling place was measured from the room where the polling occurs.

Plaintiffs claim that during the 2004 and 2006 general elections, their exit pollsters encountered difficulties in conducting their exit polling in Minnesota. They claim that some Minnesota election officials mistakenly required their pollsters to stand 100 feet from the buildings where polling occurred, rather than 100 feet from the rooms where the polling occurred.

Plaintiffs' representatives contacted the Secretary of State's Office early in September 2008 to attempt to resolve the exit polling issues before the November 4, 2008 general election. The Secretary of State's Office advised Plaintiffs that § 204C.06, subd. 1, had been amended, effective June 1, 2008, providing that no one could stand "within 100 feet of the building in which a polling place is located." The Deputy Secretary of State stated that the Secretary of State's Office had no opinion on the constitutionality of the law, but that the Statute would be enforced against exit pollers unless a court were to rule otherwise or the Minnesota legislature were to repeal the Statute.

D.      **Entry of the Preliminary Injunction**

On October 15, 2008, the Court granted Plaintiffs' motion and issued a

Preliminary Injunction.  [Docket No. 29]  <u>Am. Broad. Cos., Inc. v. Ritchie</u>, Civil

File No. 08-5285 (MJD/AJB), 2008 WL 4635377 (D. Minn. Oct. 15, 2008).  The

Court rejected Defendants' argument that Eleventh Amendment immunity

barred suit against them, holding, "that, at this preliminary injunction stage of

the proceedings, Plaintiffs have shown a sufficient connection with the

enforcement of the Statute to demonstrate that Defendants are proper parties for

injunctive relief."  2008 WL 4635377, at *4.  The Court held that "Plaintiffs are

likely to succeed on the merits of their claim that, as applied to Plaintiffs' exit

polling activities, the Statute violates the First Amendment."  <u>Id.</u> at *7.

The Court enjoined Defendants:

> from enforcing the second sentence of Minn. Stat. § 204C.06, subd. 1,
> as against Plaintiffs' exit polling activities or from prohibiting
> Plaintiffs or their agents, under the authority of Minn. Stat. §
> 204C.06, subd. 1, from conducting exit polls within 100 feet of
> Minnesota polling places on November 4, 2008, the day of the
> general election, and pending the entry of a final judgment in this
> action.

<u>Id.</u> at *8.  The Court further ordered:

> The Secretary of State shall forthwith advise all County Auditors
> that Plaintiffs and their agents are permitted to engage in exit
> polling activities within 100 feet of polling places on November 4,
> 2008, provided that their activities do not otherwise violate

Minnesota or federal law or unlawfully interfere with individuals going to and from the polling place for the purpose of voting.  The Secretary of State shall forthwith notify all County Auditors of the entry and terms of this Preliminary Injunction.

Id.

On December 4, 2008, the parties filed a joint motion to stay the matter until July 1, 2009, in light of possible amendments to the statute.  [Docket No. 34]  The Court granted the stay.  [Docket No. 35]  Based on Defendants' unopposed motion, the stay was extended until July 1, 2010.  [Docket No. 43]

### E.    Action by the Minnesota Legislature

During the 2010 legislative session, the Minnesota Legislature amended the Statute to provide an exit-polling exception to the 100-foot limit.  Upon the parties' stipulation, the Preliminary Injunction expired, the case was dismissed as moot on August 1, 2010, and judgment was entered.

Plaintiffs have now submitted their motion for approximately $250,000 in attorney fees and $7,000 in expenses.

## IV.    DISCUSSION

### A.    Standard for Award of Attorney Fees under 42 U.S.C. § 1988

Under 42 U.S.C. § 1988(b), "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (citation omitted).

### B.      Eleventh Amendment Immunity

The Court rejects Defendants' claim that Plaintiffs' claim for attorney's fees is barred by Eleventh Amendment immunity.

### 1.      Standard for Exception to Eleventh Amendment Immunity

Under the Eleventh Amendment of the United States Constitution, a state is immune from suit in federal court by citizens of another state or its own citizens. Skelton v. Henry, 390 F.3d 614, 617 (8th Cir. 2004). However, "the Eleventh Amendment does not bar a suit against a state official to enjoin enforcement of an allegedly unconstitutional statute, provided that 'such officer [has] some connection with the enforcement of the act.'" Reproductive Health Servs. of Planned Parenthood of St. Louis Region v. Nixon, 428 F.3d 1139, 1145 (8th Cir. 2005) (quoting Ex Parte Young, 209 U.S. 123, 157 (1908)).

### 2.      Discussion

The Secretary of State is the proper party because he is "the chief election official in the state," and because he has the duty to implement an injunction

regarding state election law because "if a provision of state election law cannot be implemented as a result of a court order, the Secretary of State has the authority and responsibility to 'adopt alternative election procedures.'"  Clark v. Pawlenty, 755 N.W.2d 293, 299 (Minn. 2008) (citation omitted).  See also Missouri Prot. & Advocacy Servs., Inc. v. Carnahan, 499 F.3d 803, 807 (8th Cir. 2007) (holding that, while the local election authorities administered voting, elections and registered voters, "the Secretary of State is 'the chief state election official responsible for overseeing of the voter registration process," so Eleventh Amendment immunity did not bar the voting rights lawsuit against the Secretary of State) (citations omitted).  In this case, Plaintiffs challenged the application of a statute that the Secretary of State specifically instructed county and local officials to apply.  (See 2008 Election Judge Guide at 13, 51.)

In Missouri Protection, the Eighth Circuit further held that the Eleventh Amendment did not bar a voting rights lawsuit against the Attorney General because he "has statutory authority to represent the state in both criminal and civil cases," and violation of the election statute at issue could result in a criminal prosecution.  499 F.3d at 807.  In this case, violation of the Statute is a criminal misdemeanor.  Minn. Stat. § 645.241.

Minnesota's election statutes provide that it is the duty of the Secretary of State, assisted by the Attorney General, to instruct election officials on election procedures and that local election officials act at the direction of the Secretary of State and the Attorney General:

> The secretary of state shall prepare and publish a volume containing all state general laws relating to elections.  The attorney general shall provide annotations to the secretary of state for this volume.  . . . The secretary of state may prepare and transmit to the county auditors and municipal clerks detailed written instructions for complying with election laws relating to the conduct of elections, conduct of voter registration and voting procedures.

Minn. Stat. § 204B.27, subd. 2.  See also Minn. Stat. § 204B.25, subd. 4 ("At least once every two years, the county auditor shall conduct training sessions for the municipal and school district clerks in the county.  **The training sessions must be conducted in the manner provided by the secretary of state**.") (emphasis added).

Here, the record shows that the Secretary of State specifically instructed local election officials to enforce the Statute on election day and specifically advised Plaintiffs' representatives that the law would be enforced to prohibit Plaintiffs' exit polling activities on November 4, 2008.

Under Minnesota law, if a provision of state election law cannot be implemented as a result of a court order, the Secretary of State has the duty to "adopt alternative election procedures to permit the administration of any election affected by the order."  Minn. Stat. § 204B.47.  This is exactly what the Secretary of State did after this Court issued the Preliminary Injunction in this case.

This Court's Preliminary Injunction did not merely enjoin local officials.  It explicitly enjoined the Secretary of State and the Attorney General from enforcing the Statute against Plaintiffs.  It further ordered the Secretary of State to advise all County Auditors that Plaintiffs are permitted to engage in exit polling within 100 feet of the polling places and to notify them of the terms of the Preliminary Injunction.

Eleventh Amendment immunity does not apply simply because local election officials implemented the Secretary of State's exit-polling instructions throughout the state.  See Clark, 755 N.W.2d at 299 ("Although the Secretary of State correctly points out that he is not directly responsible for the printing and preparation of ballots, when, as here, a ballot challenge under Minn. Stat. § 204B.44 concerns an office for which voting is conducted statewide and for which

the Secretary of State has provided the challenged ballot information to all 87 county auditors, we conclude that the Secretary of State is a proper party.").  Nor are the differences in procedures and personnel used by local election officials relevant in this case, because Plaintiffs do not challenge those differences.  Here, Plaintiffs challenged the uniform instructions Defendants provided to all local officials barring Plaintiffs from exercising their constitutional right to conduct exit polling.  Cf. In re Contest of General Election Held on Nov. 4, 2008, 767 N.W.2d 453, 464-66 (Minn. 2009) (analyzing equal protection challenge based upon allegation of unequal application of election statutes or regulations by local officials).

The Court further notes that, in CBS v. Growe, the Attorney General's office conceded that the Secretary of State represented the proper party to effectuate relief with regard to an injunction permitting exit polling.

The Court rejects Defendants' claim of Eleventh Amendment immunity.

C.    Whether Plaintiffs Are Prevailing Parties

The Court holds that Plaintiffs are prevailing parties.

1.      Standard for "Prevailing Party"

A "plaintiff must be a 'prevailing party' to recover an attorney's fee under

§ 1988."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  "[A] plaintiff 'prevails'

when actual relief on the merits of his claim materially alters the legal

relationship between the parties by modifying the defendant's behavior in a way

that directly benefits the plaintiff."  Farrar v. Hobby, 506 U.S. 103, 111-12 (1992).

> The Supreme Court refined this standard in Buckhannon when it
> rejected the "catalyst" theory, . . . which permitted a plaintiff to
> recover fees if its lawsuit achieved the desired result through a
> voluntary change in the defendant's conduct.  The Court held
> instead that a party must obtain a judicially sanctioned material
> alteration of the legal relationship between the parties to the lawsuit
> to achieve prevailing party status.  Surveying its past cases the Court
> determined that enforceable judgments on the merits and consent
> decrees create the requisite material alteration in the parties' legal
> relationship to achieve prevailing party status.

Advantage Media, L.L.C. v. City of Hopkins, Minn., 511 F.3d 833, 836-37 (8th Cir.

2008) (citing Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health

& Human Res., 532 U.S. 598, 602-05 (2001)).

"[A] preliminary injunction can in some instances carry the judicial

imprimatur required by Buckhannon to convey prevailing party status."

Advantage Media, L.L.C., 511 F.3d at 837 (citations omitted).

> For example, the grant of a preliminary injunction should confer
> prevailing party status if it alters the course of a pending

13

administrative proceeding and the party's claim [] for [a] permanent
injunction is rendered moot by the impact of the preliminary
injunction.  That type of preliminary injunction functions much like
the grant of an irreversible partial summary judgment on the merits.

N. Cheyenne Tribe v. Jackson, 433 F.3d 1083, 1086 (8th Cir. 2006) (citations

omitted).

## 2.    Existence of a Judicially Sanctioned Material Alteration

The Court's Preliminary Injunction materially altered the legal relationship

between Plaintiffs and Defendants by modifying Defendants' behavior in a way

that directly benefitted Plaintiffs.  This Court found that exit polling is protected

by the First Amendment; that Plaintiffs had established a substantial likelihood

of success on the merits of their First Amendment claim; and that irreparable

harm would result from the enforcement of the Statute.  The Court barred

Defendants from using the Statute to prevent Plaintiffs from conducting exit

polling on Election Day 2008, and ordered Defendants to advise local election

officials that Plaintiffs were permitted to conduct their exit polling.  Because of

the Preliminary Injunction, Plaintiffs were able to conduct exit polls statewide on

Election Day 2008.

In direct response to the Preliminary Injunction, the Minnesota Legislature

amended the Statute to incorporate the terms of the Preliminary Injunction,

14

effective August 1, 2010, providing Plaintiffs complete relief in the future.  This

matter was dismissed as moot only because Defendants took action to comply

with the Preliminary Injunction.  Plaintiffs obtained all the relief that they sought

from the Preliminary Injunction:

> A "preliminary injunction issued by a judge carries all of the 'judicial imprimatur' necessary to satisfy <u>Buckhannon</u>," and this preliminary injunction placed a judicial imprimatur on plaintiffs' entitlement to substantially all the relief they sought in the complaint.  This was not a case where the filing of the lawsuit resulted in voluntary change on the part of the [defendant].  It was precisely because the Court believed voluntary change was not to be expected that it ordered the [defendant] not to engage in the practices of which plaintiffs complained.  There was nothing voluntary about the [defendant's] giving up those practices.  And the preliminary injunction was not "dissolved for lack of entitlement."  Rather, it was terminated only when the new statute was enacted "after the preliminary injunction had done its job."  The ultimate mooting of plaintiffs' claims resulted not solely from the filing of the lawsuit but from the results of the legal process.

<u>People Against Police Violence v. City of Pittsburgh</u>, 520 F.3d 226, 233-34 (3d Cir.

2008) (citations and footnote omitted).  <u>See also</u> <u>Dearmore v. City of Garland</u>, 519

F.3d 517, 525 (5th Cir. 2008) ("[T]he district court's grant of the preliminary

injunction directly caused the City to amend the offending portion of the

Ordinance, thereby mooting the case and preventing [the plaintiff] from

obtaining final relief on the merits.  We note that this is not a case in which the

City voluntarily changed its position <u>before</u> judicial action was taken.  Indeed, if the City had mooted the case through amending the Ordinance before the court granted the preliminary injunction, then [the plaintiff] could not qualify as a prevailing party under <u>Buckhannon</u> because it would have improperly invoked the 'catalyst theory.'  The City, however, mooted the case <u>after</u> and <u>in direct response to</u> the district court's preliminary injunction order.").

### D.    Whether Special Circumstances Exist

The Court holds that no special circumstances exist that would justify denial of attorney's fees.

"Although prevailing parties should ordinarily recover an attorney's fee, a district court has discretion to deny an award where special circumstances would render such an award unjust."  <u>Peter v. Jax</u>, 187 F.3d 829, 837 (8th Cir. 1999) (citation omitted).  The special circumstances exception is "narrowly construed."  <u>Id.</u>  "[A] defendant's good faith alone is not a special circumstance sufficient to justify a denial of fees."  <u>Id.</u> (citation omitted).  Nor is a plaintiff's ability to pay his own attorney's fees.  <u>See, e.g.,</u> <u>Jones v. Wilkinson</u>, 800 F.2d 989, 991-92 (10th Cir. 1986).  "[I]f attorney's fees under § 1988 are to be denied to the

prevailing party a strong showing is necessary of special circumstances rendering the award unjust." Hatfield v. Hayes, 877 F.2d 717, 721 (8th Cir. 1989).

Defendants rely on a district court opinion from the Western District of Washington for the proposition that special circumstances exist in this case. See Thorsted v. Gregoire, 841 F. Supp. 1068, 1084 (W.D. Wash. 1994), aff'd, 75 F.3d 454 (9th Cir. 1996). The viability of Thorsted is doubtful, in light of the Ninth Circuit's recent exit-polling opinion, reversing the district court's denial of § 1988 attorney fees to the media plaintiffs and warning district courts not to rely on Thorsted, stating that it was a decision that "we have already confined as based on factors largely unique to that case." Am. Broad. Cos. v. Miller, 550 F.3d 786, 788 (9th Cir. 2008) (citation omitted).

In any event, even under the Thorsted factors, denial of attorney's fees is not justified in this case. This case did not involve a voter-approved statute. Defendants did, indeed, precipitate this litigation. The Secretary of State urged the Legislature to adopt the unconstitutional language in the Statute, and the Secretary of State's Office advised Plaintiffs that the statute would be enforced against them. This case did not involve a novel legal issue: the Secretary of State took these actions despite the previous Growe decision and numerous other

17

federal decisions regarding exit polling.  In any case, as Defendants admit, their good faith does not constitute a special circumstance.  Nor does Plaintiffs' ability to pay their own attorney's fees.

Given that an award of attorney's fees is appropriate, the Court now turns to the question of the proper amount of such an award.

### E.    Whether the Claim for Attorney Fees Is Excessive

### 1.    Lodestar Method

"The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates.  When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates."  Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005) (citations omitted).  "The district court should exclude hours that were not reasonably expended.  The onus is on the party seeking the award to provide evidence of the hours worked and the rate claimed."  Wheeler v. Missouri Highway & Transp. Comm'n, 348 F.3d 744, 754 (8th Cir. 2003) (citations omitted).  Additionally, "[t]he court may reduce the award if the documentation of the hours is inadequate."  DeGidio v. Pung, 920 F.2d 525, 533 (8th Cir. 1990).

18

2.      Cahill's Billing Rates

The Court agrees with Defendants that the high New York billable hour

rates billed by the attorneys at Cahill Gordon & Reindel LLP, are inappropriate

for this Minnesota-venued case.

"The statute and legislative history establish that 'reasonable fees' under §

1988 are to be calculated according to the prevailing market rates in the relevant

community . . . ." Blum v. Stenson, 465 U.S. 886, 895 (1984). "The 'relevant

community' for determining hourly rates is the place where the case was tried."

Farmers Co-op Co. v. Senske & Son Transfer Co., 572 F.3d 492, 500 (8th Cir.

2009).  "In a case where the plaintiff does not use local counsel, the court is not

limited to the local hourly rate, if the plaintiff has shown that, in spite of his

diligent, good faith efforts, he was unable to find local counsel able and willing

to take the case." Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001) (citation

omitted).

Highly competent First Amendment counsel was available locally.  For

example, John Borger and the Faegre & Benson law firm, who, in fact, took a role

in litigating this case, have repeatedly demonstrated their expertise in First

Amendment law in numerous cases litigated in this Court.  The billable hour

rates used in the lodestar calculation should be comparable to those submitted

19

by Faegre & Benson.  See, e.g., Am. Broad. Co., Inc. v. Brunner, slip op. at 27-31

(S.D. Ohio Sept. 30, 2008) (holding that, while Susan Buckley was excellent,

competent First Amendment counsel was available in Cincinnati, Ohio, and the

exit polling case was not so complicated as requiring an out-of-town specialist, so

using Cincinnati, Ohio billing rate for Cahill).

Moreover, while this case presented an important issue and Plaintiffs

achieved a complete victory, there were multiple federal opinions to guide

litigation of exit-polling statutes, including the Growe opinion dealing with a

Minnesota exit-polling statute.  This was not a particularly difficult First

Amendment case.  Based on other exit-polling decisions submitted by Plaintiffs,

Cahill and its clients were aware that, in some cases, district courts have refused

to allow Cahill's New York rates and have applied the local rates.  Therefore,

Cahill and its clients were aware of the possibility that this Court, too, might

reduce Cahill's reimbursement rate.

Plaintiffs have provided an alternative calculation of Cahill's fees at

Faegre-type rates, resulting in an attorney's fee request of $144,246.50 for Cahill

for 317 hours of attorney time.

### 3.     Number of Hours Billed

"[T]he plaintiff bears the burden of establishing an accurate and reliable factual basis for an award of attorneys' fees, and . . . the district court has wide discretion in making a fee award determination."   <u>Philipp v. ANR Freight System, Inc.</u>, 61 F.3d 669, 675 (8th Cir. 1995) (citations omitted).

The Court has carefully reviewed the billing records submitted by Plaintiffs and determines that it is appropriate to cut the overall billed amount (under Minnesota rates) by 25%.  There are multiple facts which have contributed to this conclusion.

First, Plaintiffs have overbilled for Phase I, the portion of the case consisting of preparation and filing of the Complaint and Motion for Preliminary Injunction.  Plaintiffs have submitted fees for 154.4 hours of work by 7 attorneys. Five months before the commencement of this case, the same Plaintiffs, also represented by Cahill, filed a similar lawsuit in the District of South Dakota seeking to enjoin a South Dakota statute to the extent that it barred Plaintiffs from conducting exit polls within 100 feet of polling places.  <u>Am. Broad. Cos., Inc. v. Nelson</u>, Civil File No. 08-4068 (LLP) (D.S.D.).   Like Minnesota, South Dakota resides within the Eighth Circuit.  Therefore, the governing case law was

substantially similar.  The Complaint, Motion for Preliminary Injunction, and

supporting documents filed in the South Dakota case bear marked similarities to

the corresponding documents filed in this case.  While there were, in fact, unique

issues in this case, such as the differing language and legislative history of the

statutes at issue, more than 150 hours of attorney time for what was largely

repetition of work from the South Dakota case is unreasonable.  See Am. Civil

Liberties Union of Ga. v. Barnes, 168 F.3d 423, 430 (11th Cir. 1999) ("An attorney

is not entitled to be paid in a case for the work he or another attorney did in

some other case.").

Additionally, many of the billing entries submitted by Cahill attorneys

were overly vague, so that the Court cannot accurately evaluate the

reasonableness of much of the legal research, conferences, and correspondence

billed.  See Maule v. Nicholson, Civil No. 04-1369, 2006 WL 3758390, at *2 (D.

Minn. Dec. 20, 2006) ("The Court also finds the billing to be vague to the extent

that it is not possible to discern whether hours expended were reasonable or

duplicative.").

While time spent preparing a fee application is compensable, the more

than 60 hours claimed for that task here, which does not even include time spent

preparing for and performing oral argument is excessive.  There are no

particularly complex issues presented with regard to the attorney's fees motion.

Although the Court concludes that a reduction of the fee award is

warranted, it does not agree with the rest of the objections raised by Defendants.

The Court does not find the time billed by Faegre for reviewing the legislative

history of the Statute to be unreasonable.  This research was necessary to argue,

successfully, that the Statute was not content-neutral.  Reviewing the legislative

history was critical and time-consuming.   The Court further finds that Plaintiffs'

counsel is entitled to compensation for time spent monitoring compliance with

the Preliminary Injunction.  See Ass'n for Retarded Citizens of N.D. v. Schafer, 83

F.3d 1008, 1010-11 (8th Cir. 1996) ("The injunction must be implemented, that

process must be monitored, and lingering or new disputes over interpretation of

the decree must often be presented to the court for resolution.  These functions

take time and effort by the prevailing party's attorney.  Therefore, it is generally

accepted that prevailing plaintiffs are entitled to post-judgment fee awards for

legal services necessary for reasonable monitoring of the decree.") (citation and

footnote omitted).

The Court has carefully reviewed the billing records submitted by both Faegre and Cahill.  It is intimately familiar with this case.  Based on its analysis, as recounted above, the Court concludes that a 25% reduction in the amount billed under Minnesota rates is a just and reasonable estimation of reasonable fees incurred.   Therefore, the Court awards attorney's fees in the amount of $141,510.75.

### F.      Whether the Costs Claimed Are Excessive

"Reasonable expenses of litigation incurred by counsel on the prevailing side can be awarded as part of the fees due under Section 1988.  Such awards are not for court costs proper, but for reasonable expenses of representation." SapaNajin v. Gunter, 857 F.2d 463, 465 (8th Cir. 1988) (citations omitted).

Faegre requests disbursements of $1,137.97 and Cahill requests disbursements of $5,726.55.  Plaintiffs assert that all of the listed expenses are of the type normally charged to a fee-paying client.  Based on the Court's knowledge of Minnesota billing practices, the Court concludes that the expenses requested by Plaintiffs are reasonable.  The Court awards the full $6,864.52 in requested disbursements.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

Plaintiffs' Motion for an Award of Attorney's Fees and Expenses
Pursuant to 42 U.S.C. § 1988 [Docket No. 52] is **GRANTED** as
follows: Plaintiffs are awarded $148,375.27 in attorney's fees and
expenses.


Dated:   February 14, 2011          s/ Michael J. Davis
                                    Michael J. Davis
                                    Chief Judge
                                    United States District Court